# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| Matadoor Restaurant Group, LLC, | ) | Case No. 25- |
| | ) | |
| Debtor. | ) | |

### MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTOR TO PAY CERTAIN PRE-PETITION WAGE AND WAGE-RELATED CLAIMS AND MEMORANDUM IN SUPPORT

Matadoor Restaurant Group, LLC, as debtor and debtor-in-possession in this case (hereinafter, the "Debtor") hereby moves the Court pursuant to 11 U.S.C. 11 U.S.C.§§ 105(a), 363(b)(1), and 507(a)(4), for the entry of an order authorizing the Debtor to pay certain pre-petition claims consisting of employee wages, insurance premiums, and other employee obligations as defined herein (collectively, "Pre-Petition Employee Obligations"). Payment of such claims is necessary to ensure the continued operations of the Debtor. In support of this motion ("Motion"), the Debtor would show as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Local Civil Rule 83.IX.01, D.S.C. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for relief requested herein are §§ 105(a), 363, 507(a)(4), 1107(a) and 1108 of Title 11 of the United States Code and Rule 6003 of the Federal Rules of Bankruptcy Procedure.

### STATEMENT OF FACTS

4. On the same date hereof, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date").

5. The Debtor is operating its business and managing its assets as debtor in possession pursuant to §§1107(a), 1108, and 1182 of the Bankruptcy Code.

6. Debtor operates 22 Del Taco restaurants, with locations in Georgia and Alabama.

7. The Debtor employs approximately 336 people (collectively, the "Employees"), who

perform a variety of functions for the operation of the Debtor's business.

8. All Employees are paid bi-weekly in the ordinary course of business. The Debtor's payroll is administered through a payroll service. The Employees receive payment through direct deposits, which are administered by the payroll service. The last payroll was made in the ordinary course of business on July 8, 2025, prior to filing, and covered wages from time worked June 18, 2025 to July 1, 2025. The next scheduled pay date in the ordinary course of business is **July 22, 2025** and will include wages for time worked from July 2, 2025 through July 15, 2025, which includes compensation for work performed by the Employees pre-petition.

9. None of the Employees are insiders. Most are hourly employees, except for restaurant managers who are on salary.

10. The Debtor seeks authority to pay the pre-petition payroll to the Employees in the ordinary course of business.

11. The Debtor estimates it will owe certain amounts relating to payroll processing. The Debtor seeks authority to pay any amount due for payroll processing to maintain the payroll system.

12. As of the Petition Date, the Debtor believes it is current on all payroll for the Employees.

13. Paying the regularly scheduled payroll is absolutely necessary to prevent a disruption in the Debtor's business operations.

14. The Debtor is required to withhold amounts related to federal, state, and local income taxes, Social Security, and Medicare taxes for payment to the appropriate taxing authority. Further, the Debtor must match its own funds for Social Security and Medicare taxes and pay, based on a percentage of gross payroll, and additional amounts for federal and state unemployment insurance (all of the amounts above collectively, the "Payroll Taxes"). The Debtor seeks the authority to pay or transfer prepetition Payroll Taxes and to continue to pay Payroll Taxes on a post-petition basis to the respective taxing authorities in the ordinary course of business and consistent with past practice.

15. The Debtor is required by state law to maintain workers' compensation insurance for their Employees and the Debtor provides such coverage through insurance policies (the "Workers' Compensation Insurance"). The Debtor seeks authority to continue to administer its Workers' Compensation Insurance.

2

16. Lastly, the Debtor requests that the Court enter an order requiring the Debtor's bank and payroll service to honor any checks that were paid to meet all of its pre-petition obligations for its Employees. If such checks are dishonored, the Debtor seeks authority to issue replacement checks and to reimburse the Employees for any loss resulting therefrom.

## STATEMENT OF LAW

Bankruptcy Code Sections 105(a), 507(a)(4), and 363, read together, provide this Court the power to give the Debtor authorization to pay the Pre-Petition Employee Obligations. 11 U.S.C. §§ 105, 363, 507(a)(4).

This Court should authorize the Debtor to pay the Pre-Petition Employee Obligations described above pursuant to Bankruptcy Code Section 105(a) and the "necessity of payment" doctrine. *See In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D.Va. 1992) ("Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor"); *In re Synteen Technologies, Inc.*, No. 00-02203, 2000 WL 33709667, at *2 (Bankr. D.S.C. April 14, 2000). Bankruptcy Code Section 105(a) empowers this Court to issue any order "that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This Court has recognized that for the Court to allow a payment of a pre-petition claim, the Debtor must demonstrate the payment meets the "necessity of payment" rule[1]. *In re Synteen Technologies, Inc.,* 2000 WL 33709667, at *2. To meet the "necessity of payment" rule and pay pre-petitioned claims, the Debtor must show that the payment is essential to the continued operation of the business. *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("necessary to avert a serious threat to the Chapter 11 process"). "Courts usually take into consideration whether the payment of the obligation at issue is critical to the reorganization of debtor's business or fundamentally necessary to the continuation of the debtor's operations." *In re Synteen Technologies, Inc.*, 2000 WL 33709667, at * 2.

---

[1] The "necessity of payment" rule was first recognized by the Supreme Court in *Miltenburger v. Logansport, C. & S.W. R.Co.*, 106 U.S. 286 (1882). Although the Fourth Circuit has interpreted Section 105(a) to generally not permit a payment to unsecured creditors in a Chapter 11 proceeding "except under and pursuant to a plan of reorganization that has been properly presented and approved, see *Official Committee of Equity Sec. Holders v. Mabey* (A.H. Robbins Co., Inc.), 832 F.2d 299, 302 (4th Cir. 1987), the court did not address the "doctrine of necessity". *In re NVR L.P.*, 147 B.R. 126, 127, n. 2 (Bankr. E.D. Va. 1992) ("it is unclear whether the broad language in Mabey failed to address the 'necessity of payment' exception deliberately or by happenstance"). Courts in the Fourth Circuit have assumed that the doctrine of necessity was not directly at issue in *Mabey*. *In re Floyd*, No. 20-02743-5, 2020 WL 6164328, at n. 5 (Bankr. E.D. N.C. Oct. 20, 2020).

The Seventh Circuit has interpreted the "necessity of payment" doctrine in the negative and held that Section 105(a), alone, does not give courts the authority to order payment of prepetition creditors prior to a confirmed plan. *In re Kmart Corp.*, 359 F.3d 866 (7th Cir. 2004). However, the Seventh Circuit did not make a ruling to cease the existence of the "necessity of payment" doctrine and reasoned that the Court may have the authority to order payment of pre-petition creditors through Section 105(a) in conjunction with another code section such as Section 363(b). *See In re Kmart Corp.*, 359 F.3d at 872 ("The trustee [or debtor in possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.", citing 11 U.S.C. 363(b)(1)). However, the Seventh Circuit's analysis is limited to critical vendors of the debtor, and should not apply to pre-petition claims for employee wages and benefits because such claims enjoy priority under Section 507(a)(4) of the Bankruptcy Code. *See In re CEI Roofing, Inc.*, 315 B.R. 50, 60-61 (Bankr. N.D. Tex. 2004).

Through Section 105(a), this Court has the authority to grant the Debtor's request to pay certain Pre-Petition Employee Obligations under 11 U.S.C. § 507(a)(4) of the Bankruptcy Code. 11 U.S.C. §§ 507(a)(4). Section 507(4) require that certain claims, such as "wages, salaries, or commissions, including vacation, severance, and pay earned by an individual…" that were earned within 180 days' pre-petition, be given unsecured priority status to the extent of $13,650.00 for each employee. 11 U.S.C. §§ 507(4); *see Matson v. Alarcon*, 651 F.3d 404 (4th Cir. 2011) (holding that the entirety of a debtor's severance pay when the debtor becomes entitled to receive it is entitled to priority treatment under Section 507(4)); *See also In re JG Furniture Group Inc.*, 405 F.3d 191 (4th Cir. 2005) (holding that unpaid health insurance premiums and fees owed by the debtor was within the 180 days preceding the bankruptcy and was entitled priority status under Section 507(4)). Because the Bankruptcy Code offers such pre-petition claims priority, the general unsecured creditors will not be prejudiced by the Debtor's payment of these claims and will not upset the order of the priority set out in the Bankruptcy Code. *See In re CoServ, LLC*, 273 B.R. 487, (Bankr. N.D. Tex. 2002) ("Congress clearly knew how to place some unsecured claims ahead of others in right to payment", citing to 11 U.S.C. §§ 507(a) and 1171(b)).

In this case, the payment of the Pre-Petition Employee Obligations is essential to the Debtor's business and operations. The Debtor's business depends on its Employees. Without the payment of the Pre-Petition Obligations, the Debtor's business would face the high risk of the potential loss of Employees during this critical time for the Debtor's business. Therefore, the

payment of the Pre-Petition Employee Obligations meets the "necessity of payment" rule and this Court should grant the Debtor the authority to pay the Pre-Petition Employee Obligations.

In addition, the Debtor believes that the Pre-Petition Employee Obligations per each individual Employee is within the statutory cap listed in Section 507(a)(4). 11 U.S.C. § 507(a)(4). Therefore, the Pre-Petition Employee Obligations are entitled to priority pursuant to Section 507(a)(4). *Id.* The Debtor will not pay any amounts in excess of the statutory cap without further order of the Court.

Moreover, to the extent the payment of the Pre-Petition Employee Obligations is determined to be outside the ordinary course of business, this Court should grant the Debtor to expend funds for such payment pursuant to Section 363. 11 U.S.C. § 363. For all of the reasons stated above, the payment of the Pre-Petition Employee Obligations is essential to the preservation and continuation of the business, and is an adequate business justification to expend such funds.

WHEREFORE, having set forth the basis for its Motion, Debtor requests authority to pay all the Pre-Petition Employee Obligations and requests such other and further relief as the Court deems proper.

                                              BARTON BRIMM, PA

                                              By: /s/ Christine E. Brimm
                                              Christine E. Brimm, #6313
                                              Attorney for the Debtor
                                              P.O. Box 14805
                                              Myrtle Beach, SC 29587
                                              cbrimm@bartonbrimm.com
                                              Tele: (803) 256-6582